# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

|  |  |  |
|---|---|---|
| ROSEANN WALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 1:23-cv-00048** |
| | ) | **Judge Campbell / Frensley** |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment Based on the Administrative Record. Docket No. 9. Plaintiff has filed an accompanying Memorandum. Docket No. 9-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 11.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for Supplemental Security Income ("SSI") on December 16,

1

2019, alleging that she had been disabled since July 1, 2016, due to rheumatoid arthritis, back pain, neuropathy, joint pain, psoriasis, depression, and anxiety. *See, e.g.,* Docket No. 7, Attachment ("TR"), pp. 214-15, 239. Plaintiff's application was denied both initially (TR 86) and upon reconsideration (TR 113). Plaintiff subsequently requested (TR 140-42) and received (TR 45-64) a hearing. Plaintiff's hearing was conducted on May 19, 2022, by Administrative Law Judge ("ALJ") Linda Roberts-Reap. TR 45. Plaintiff and Vocational Expert, Danielle Moore, appeared and testified. TR 45.

On May 31, 2022, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 19. Specifically, the ALJ made the following findings of fact:

> 1. **The claimant has not engaged in substantial gainful activity since December 16, 2019, the application date (20 CFR 416.971 *et seq.*).**
>
> 2. **The claimant has the following severe impairments: disorders of the skeletal spine; depressive disorders; peripheral neuropathy; skin disorders; inflammatory arthritis; and anxiety disorders (20 CFR 416.920(c)).**
>
> 3. **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**
>
> 4. **After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant can occasionally lift and carry 50 pounds and frequently lift 25 pounds; she can stand and/or walk for 6 hours out of 8 hours, can sit for 6 out of 8 hours; can frequently climb ladders, ropes, scaffolds, ramps, and stairs, balance, stoop, kneel, crouch, and crawl; and she can frequently reach overhead with the left upper extremity.**

2

Mentally, claimant can understand, remember, and carry out simple routine repetitive tasks; she can maintain concentration, persistence and pace for such tasks in two-hour intervals with customary breaks. She can interact occasionally with supervisors and coworkers, but she cannot interact with the general public. She would work better with things than with people. Additionally, the claimant can adapt to occasional changes in the workplace and work routine.

5. **The claimant has no past relevant work (20 CFR 416.965).**

6. **The claimant was born on May 20, 1966 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. The claimant subsequently changed age category to advanced age (20 CFR 416.963).**

7. **The claimant has at least a high school education (20 CFR 416.964).**

8. **Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82–41 and 20 CFR Part 404, Subpart P, Appendix 2).**

9. **Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).**

10. **The claimant has not been under a disability, as defined in the Social Security Act, since December 16, 2019, the date the application was filed (20 CFR 416.920(g)).**

TR 26-27, 30, 36-38.

On July 21, 2022, Plaintiff timely filed a request for review of the hearing decision. TR 210-13. On June 29, 2023, the Appeals Council issued a letter declining to review the case (TR

1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at

4

229; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically

5

determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. §423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual

---

[1] The Listing of Impairments is found at 20 CFR §404, Subpt. P, App. 1.

functional capacity.

*See, e.g.,* 20 CFR §§404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.  *Moon*, 923 F.2d at 1181; 20 CFR §404, Subpt. P, App. 2, Rule 200.00(e)(1), (2).  *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985).  Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. §423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that substantial evidence does not support the ALJ's evaluation of Ms. Walls' claim for SSI.  Specifically, Plaintiff contends that the ALJ (1) committed reversible error when she failed to properly weigh the evidence in evaluating Plaintiff's RFC, (2) failed to

7

properly evaluate Plaintiff's disabling symptoms, and (3) did not proffer a hypothetical question to the vocational expert that adequately accounted for all of Plaintiff's limitations. Docket No. 9-1, p. 10. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. §405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of §405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Residual Functional Capacity ("RFC")

Plaintiff maintains that the ALJ failed to establish how the limitations in the RFC correspond to the medical record; therefore, the RFC lacks substantial evidence to support it. Docket No. 9-1, p. 11. Specifically, Plaintiff argues that the ALJ mischaracterized and selectively culled through the evidence to determine that Plaintiff was not disabled. *Id.* at 12. Additionally, Plaintiff argues that the medical record contains further mental limitations in her ability to function

than were considered by the ALJ. *Id.* at 14-15.

Defendant responds that the ALJ considered the entire record, including Plaintiff's subjective complaints, and determined that it did not support Plaintiff's allegations. Docket No. 11, p. 5. Defendant details the ALJ's decision-making process and why it found the consultative examination of Donna Keown, M.D., not fully persuasive and the second prior administrative findings more persuasive. *See id.* at 6. The ALJ additionally found that the evidence at the hearing level did not support additional imitations or restrictions. *See id.* at 7. Defendant argues that Plaintiff ignored previous doctors' consideration of evidence that allegedly supports greater limitations and failed to submit medical opinions demonstrating that she is incapable of performing medium work with limitations. *See id.* at 8. Defendant also draws attention to the distinction between assessing mental impairments for determining severity of impairments and the evaluation of the effects of impairments for purposes of the RFC finding, so the ALJ's finding that an individual can perform simple, routine, repetitive tasks with occasional interaction with others means that these tasks can be performed without being affected by the limitations in one's RFC. *See id.* at 9.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR §404, Subpt. P, App. 2 ' 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including

9

manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR§ 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retains the RFC for medium work with limitations. TR 30. The ALJ explained:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant can occasionally lift and carry 50 pounds and frequently lift 25 pounds; she can stand and/or walk for 6 hours out of 8 hours, can sit for 6 out of 8 hours; can frequently climb ladders, ropes, scaffolds, ramps, and stairs, balance, stoop, kneel, crouch, and crawl; and she can frequently reach overhead with the left upper extremity. Mentally, claimant can understand, remember, and carry out simple routine repetitive tasks; she can maintain concentration, persistence and pace for such tasks in two-hour intervals with customary breaks. She can interact occasionally with supervisors and coworkers, but she cannot interact with the general public. She would work better with things than with people. Additionally, the claimant can adapt to occasional changes in the workplace and work routine.

TR 30.

In so finding, the ALJ considered the severity of Plaintiff's symptoms to determine the extent to which they affect her work-related activities, including a function report and daily activities. TR 31. Specifically, the ALJ stated:

> In the prior decision, Judge Heath's residual functional capacity assessment shows the claimant could perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can understand, remember, and carry out simple tasks and maintain concentration, persistence and pace for such tasks in two-hour intervals with customary breaks spread throughout the day. She can interact occasionally with supervisors and co-workers, but cannot interact with the public. Additionally, the claimant can adapt to occasional changes in the workplace. (Exhibit C1A, p8)

10

Currently, Mr. [Carl] Groves [2] submitted a pre-hearing brief theorizing that pursuant to SSR 96-8p, the claimant's documented impairments, with citations noted, would preclude her from performing even unskilled, sedentary work on a sustained basis, would result in three or more absences a month and/or require unscheduled and, therefore, unacceptable breaks throughout the workday. In an opening statement at the hearing, Mr. Groves theorized the same outcome and noted various x-rays and examination findings, per his review of the file, in an effort to support his theory of the case. Mr. Groves noted the claimant's complaints of lumbar spine pain, but stated he was unable to locate an x-ray of the lumbar spine to support the allegation. Mr. Groves minimized the claimant's history of noncompliance with mental health treatment by suggesting the treating facility was closed during COVID-19, and that the record shows no difference in the claimant's symptoms while she was taking prescribed medications and when she was not compliant with her treatment. (Exhibit C12E and Hearing Testimony)

The claimant testified that she agreed with Mr. Groves['] opening statement. In addition, the claimant stated that her arthritis and rheumatoid arthritis have slowed down her ability to do things. She has constant neck pain, and her legs feel weak and as if they were concrete blocks. She has low self-esteem, pain, fatigue, and muscle weakness. She lives alone and isolates socially.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The undersigned finds the evidence of record supports the determined residual functional capacity assessment (RFCA). As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are generally inconsistent with the objective medical evidence of record and with the claimant's reported activities of daily living (ADLs).

[2] Mr. Groves is the President of Disability Consulting, which represented Plaintiff in filing her appeal of the ALJ's denial on May 31, 2022. Mr. Groves was Plaintiff's representative at the hearing. *See* TR 307.

11

The claimant submitted a function report, dated February 24, 2020, alleging she can only lift fifteen pounds and walk thirty-five to fifty feet before having to stop and rest. She has to rest for five minutes before she can resume walking. In addition, the claimant alleged her conditions affect her ability to squat, bend, stand, reach, sit, kneel, climb stairs, use her hands, remember, complete tasks, concentrate, and handle changes in routine. (Exhibit C3E, p7) The claimant testified her arthritis and rheumatoid arthritis have slowed down her ability to do things. She has constant neck pain, and her legs feel weak and as if they were concrete blocks. She has low self-esteem, pain, fatigue, and muscle weakness. She lives alone and isolates socially. (Hearing Testimony)

Despite her alleged limitations, the claimant's ADLs show she took care of her mother by fixing her meals, running errands, sweeping, emptying her "potty chair", helping her shower, feed her dog, and fold clothes. (Exhibit C3E, p2) Records from Centerstone, Middle Tennessee Bone and Joint Clinic, and Columbia Regional Medical Center likewise show the claimant was taking care of her mother who had Parkinson's disease. (Exhibit's [sic] C2F, p6; C5F, p43; and C8F, pgs 15 and 73) Evidence from Centerstone, dated June 29, 2020, shows the claimant reported her mother had passed away and left her some property as an inheritance. (Ex C8F, p45) There is no evidence to show if she sold or does not live in the property, and if so, whether she reported the property inheritance as a resource to the Social Security Administration Field Office to determine whether she remained eligible for SSI benefits.

In addition to the above listed ADLs, the claimant's function report shows she prepares simple meals, does household chores, drives a car and goes out along [sic], shops in stores (Dollar Store, grocery store, and drug store), manages finances, watches movies twice a week, and socializes with her son and she uses Facebook. (Exhibit C3E) The claimant's reconsideration level function report shows "Everything is the same as the last one." (Exhibit C6E)

TR 31-33.

The ALJ also considered the objective medical evidence, stating:

As for the objective medical evidence, the file contains x-rays from March 2019, August 2019, and September 2019 that predate the period at issue showing mild degenerative changes/mild osteoarthritis in the shoulders; multilevel spondylosis with excessive lordosis in the cervical spine; no abnormalities in the

12

thoracic spine; no swelling or fracture in the left forearm; normal lumbar spine; and a nondisplaced fracture of the right proximal shaft of the index finger in September 2019 from a dog bite. (Exhibit's [*sic*] C2F, p6; C4F, pgs 41-42; C10F, p29; C14F, pgs 114-117; and C17F, p6) A cervical spine x- ray on October 8, 2020 showed degenerative disc disease at C6-C7. (Exhibit C17F, p8)

An MRI on December 17, 2020 shows an impression of degenerative changes with mild to moderate central canal narrowing at C5-C6 and C6-C7. (Exhibit C17F, p31) The claimant reports/alleges neuropathic pain and numbness. (C17F, p10) Yet, despite the radiological evidence contained in the file, the record does not contain an EMG or nerve conduction study. In September 2020, the claimant reported having left hand tingling that went away after she woke up (Exhibit C10F, p3) During an agency consultative examination in September 2020, Dr. Keown noted the claimant's grip strength and motor strength were normal and she was able to grasp and manipulate objects normally. (Exhibit C9F, p4) Furthermore, the treating source examinations, including those of the claimant's rheumatologist, Dr. Bailey, show the claimant has no sensory deficits, a normal gait, and normal strength. (Exhibit C4F, p25; C5F, p5; C17F, p13 and 20; and C19F, pgs 3 and 9)

As for rheumatoid arthritis, Dr. Bailey's records document a false positive ANA and rheumatoid factor in October 2019. At that time, he diagnosed polyarthralgia, discontinued pain medication Diclofenac, and prescribed Nabumetone 5000mg twice daily. In November 2019, Dr. Bailey discontinued Nabumetone and prescribed Celebrex 200mg daily with food. (Exhibit's [*sic*] C5F, pgs 14-20) Records from Maury Regional Urgent Care Columbia continue to note the false positive test in October 2021. (Exhibit C19F, p3)

Evidence from Middle Tennessee Bone and Joint, dated December 2020, show the claimant is prescribed Flexeril 10mg, Daypro 600mg, Tylenol 325mg, Gabapentin 300mg, and Tramadol 20mg. The record shows she had not attended physical therapy as recommended, but she had undergone a trigger point injection (TPI) with no reported benefit. (Exbibit C17F, p10) There were no side effects indicated.

As for psoriasis, the evidence shows examination findings documenting this condition on her hands, legs, and pits with treatment consisting of Kenalog injections and topical creams.

13

(Exhibit C5F, pgs 5 and 14; C7F, p4; C9F, pgs 2 and 4; C14F, p24; and C19F, pgs 3 and 15)

During the agency consultative examination (CE), Dr. Keown noted the claimant moved from seated to standing unremarkably with no use of assistive devices Dr. Keown noted there were raised red velvety macules on the back of the forearms and distal lower limbs, pits, and fingernails. The claimant's grip strength and motor strength were normal as were deep tendon reflexes. There was no evidence of sensory dysfunction or tremor. She had normal ability for grasping and manipulating, and her gait and station exercises normal. (Exhibit C9F)

As for depression and anxiety, evidence from Centerstone dated August 2019 shows the claimant was prescribed Paxil 60mg daily for depression, Klonopin 0.5mg twice daily as needed, and a trial of Trazodone 50mg at bedtime for sleep. The claimant reported situational stressors involving her mother's health condition, her husband of twenty years leaving her, and issues involving her son. The claimant reported to Centerstone that she had filed for disability twelve times. She likes to listen to music and play with her dogs in her spare time. An intake mental status examination (MSE) in August 2019 shows a depressed mood and sad affect, but fair memory, appropriate appearance, cooperative attitude, calm motor activity, normal speech, no hallucinations, average intelligence, intact attention and concentration, and she was alert and oriented to time, place, and person. (Exhibit C8F, pgs 12-39) A May 2020 MSE at Centerstone shows a euthymic mood, sad affect, normal speech, preoccupied thoughts but intact attention and concentration, intact memory, good judgement and insight, and that she was alert and oriented to time, place, and person. (Exhibit C8F, p60)

Psychiatric/MSE examinations at Middle Tennessee Bone and Joint Clinic, and Columbia Regional Medical Center, Maury Regional Medical Group, and St. Thomas Heart show normal findings to include a normal affect, good insight, normal mood and affect, alert and oriented with an appropriate affect, and normal memory. (Exhibit's [*sic*] C4F, p25; C5F, p5; C14F, pgs 6-9 and 24; C17F, pgs 13 and 20; C18F, p20; and C19F, pgs 3 and 9)

The Centerstone records show the claimant was discharged on January 5, 2022 due to a lapse in service for over 180 days. (Exhibit 20F, pgs 3 and 6). However, a report dated August 31, 2021 shows the claimant reported she was taking her medications as prescribed, she had no current problems, no recent emergency room or hospital

14

visits, that she sleeps five hours per night and feels rested, was having [a] hard time since mother's death, and that she was feeling better physically and her blood pressure was better. (Exhibit 20F, p25) On October 27, 2021, the claimant's case manager went to the claimant's home to check on her since the claimant had not been appointment compliant. The case manager met with the claimant's brother for services at the time since the claimant was reportedly "under the weather" with pneumonia. (Exhibit 20F, p23)

A unified care plan, dated January 4, 2022, shows a diagnosis of major depressive disorder, recurrent, severe with peripartum onset; severe tobacco use disorder; and generalized anxiety disorder with panic attacks. The claimant reported symptoms of being easily distracted and having regular anxiety attacks from family and friends who stay with her. (Exhibit 20F, p7) However, the diagnosing sources, Harrison Campbell, B.S. and Nathan Grubb, L.P.C.[,] M.H.S.P., do not appear to be acceptable medical sources for diagnosing impairments under Social Security Rules and Regulations. (Exhibit C20F, p13) Despite Mr. Groves['] assertions during the hearing, the Centerstone records show the claimant's barriers to treatment include regularly skipping or missing appointments. The claimant's history of noncompliance with medication and therapy appointments was noted again on February 7, 2022. (Exhibit C20F, pgs 15 and 17) Lastly, the claimant's assertion that her noncompliance with mental healthcare treatment was due to the Centerstone offices being closed during the COVID-19 pandemic is inconsistent with Centerstone records dated from April 2020 through July 14, 2020. (Exhibit C8F, pgs 41-66)

TR 33-35.

The ALJ also considered medical opinions and prior administrative findings, stating:

[T]he undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:

Dr. Keown opined the claimant can sit for six to eight hours, stand and/or walk for six to eight hours, lift and/or carry without restrictions, and that she required no assistive devices. (Ex C9F, p5) The undersigned finds Dr. Keown's opinion is not fully persuasive given the evidence showing cervical degenerative disc disease at two levels, radiculopathy, osteoarthritis, and her reported pain

15

complaints, and documented medications. Yet, the examination findings show the claimant has normal strength, normal sensation, and a normal gait with no assistive devices, which does not support Mr. Groves['] position that the claimant is restricted to a sedentary level RFCA. Based upon the evidence of record, the undersigned finds the evidence supports a reduction to lifting and carrying at the medium exertional level with no more than frequent overhead lifting with the left upper extremity and no more than frequent postural activities.

The State agency medical consultants, Dr. Misra and Dr. Chaudhuri, reviewed the evidence at the initial and reconsideration levels, respectively. At each level, the consultants determined the evidence supports an RFC at the medium exertional level with frequent postural activities. At the initial level, Dr. Misra added restrictions for frequent overhead reaching bilaterally. However, Dr. Chaudhuri's reconsideration level review shows restrictions to overhead reaching with the left upper extremity. Given Dr. Chaudhuri's assessment is based upon additional evidence that was received at the reconsideration level, the undersigned finds Dr. Chaudhuri's assessment is more persuasive than that of Dr. Misra. Furthermore, the undersigned finds the evidence received at the hearing level does not support additional limitations and restrictions.

The State agency psychological consultants, Dr. Schoup and Dr. Davis, reviewed the evidence at the initial and reconsideration levels, respectively. At each level, the consultants determined the evidence supports moderate limitations throughout the "paragraph B" criteria. Furthermore, the consultants['] review shows there had been no changes in the claimant's mental conditions since the date of Judge Heath's April 2019 decision. As such, the consultants adopted Judge Heath's mental RFCA under the Drummond AR. (Exhibit's [*sic*] C4A and C7A) The undersigned finds the consultants['] determinations are supported and persuasive. Thus, the undersigned likewise adopts Judge Heath's mental RFC under the Drummond AR.

TR 35-36.

Ultimately, the ALJ concluded the following:

[A]fter reviewing the clinical and objective findings in conjunction with the factors contained in SSR 16-3p, the undersigned finds the claimant's medically determinable impairments could produce her alleged symptoms; however, the objective medical evidence did not

16

support the degree to which she alleged their limiting effects.

Further supporting the undersigned's residual functional capacity assessment, the evidence shows the claimant's activities of daily living are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In addition, the claimant's objective examinations and/or diagnostic testing did not support the severity of her alleged symptoms for a consecutive twelve-month durational period to the extent that she has alleged. Lastly, for reasons discussed, the claimant's testimony was not reasonably consistent with the evidence of record.

After a thorough review of the evidence, including the claimant's allegations, forms completed at the request of Social Security Administration, testimony, the objective medical findings, medical opinions, and other relevant evidence, the undersigned finds the claimant is capable of sustaining work activity on a regular and continuing basis within the restrictions and limitations contained within the residual functional capacity assessment.

TR 36.

Plaintiff argues that that the ALJ selectively culled through the evidence to find Plaintiff not disabled, but the ALJ's opinion cites to objective medical evidence demonstrating degenerative changes in the shoulders and spine, and it ultimately finds that these impairments could produce her symptoms. *See* TR 33, 36. While Plaintiff asserts that the treatment notes are inconsistent with an RFC for medium work, she does not proffer an explanation for *why* the notes are inconsistent for medium work with the ALJ's imposed limitations, so the claim that the ALJ has erred in evaluating the objective medical evidence is unpersuasive. *See* Docket 9-1, p. 12.

Plaintiff is correct in pointing out that, while the ALJ assessed her mental limitations, she did fully address all aspects that are discussed in the medical record. *See id.* at 13. As quoted above, the ALJ's assessment of mental limitations acknowledges her diagnoses for depression and anxiety, situational stressors, psychiatric examinations that showed normal findings, and her appointment noncompliance. *See* TR 34-35. The ALJ's opinion does not include some treatment

17

notes, such as Plaintiff's report that someone had poured slugs and leeches all over her car, and she could not determine whether the hallucinations were based in reality. *See id.*; Docket 9-1, p. 13. The ALJ does address that the diagnosing sources involved in Plaintiff's unified care plan, which showed diagnoses that include major depressive disorder and generalized anxiety disorder with panic attacks, do not appear to be acceptable medical sources under Social Security Rules and Regulations, but does not address whether the authors of other such medical reports are acceptable. *See* TR 35.

Nonetheless, there is still substantial evidence supporting the ALJ's opinion. While Plaintiff points out that she was described as "vegetative," the record actually states "vegetative sxs wnl," which means vegetative symptoms[3] were found to be within normal limits.[4] *See* Docket 9-1, p. 13; TR 1108. The same progress notes describe Plaintiff's diagnoses of major depressive disorder and generalized anxiety disorder, finding a low risk of complications and that the symptoms cause a noticeable, but modest, functional impairment that may warrant medication. *See* TR 1108. This determination comports with the evidence cited by the ALJ regarding Plaintiff's mental impairment and its limiting effects. *See* TR 34-35. Although there is significant evidence supporting the alleged limitations of Plaintiff's impairments, the decision of the ALJ must stand if substantial evidence supports the conclusion reached, and the record reflects

---

[3] Vegetative symptoms refer to physical symptoms of depression, including fatigue, change in sleep, appetite, and weight, and change in body temperature. *See* S. Paradiso et al., *Cognitive and Daily Functioning in Older Adults with Vegetative Symptoms of Depression*, 25 INT'L J. OF GERIATRIC PSYCHIATRY No. 6 569 (2010).

[4] According to numerous sources, "sxs" in the context of medical charts refers to symptoms, and "wnl" means "within normal limits." *See, e.g.,* SPRING GROVE HOSP. CTR., ABBREVIATIONS 3-4, https://health.maryland.gov/springgrove/Documents/Abbreviations%20and%20Attachment.pdf; A. Hardin & C. Baldwin-Sayre, *L-Methylfolate as a Monotherapy for Treatment-Resistant Depression: A Case Study*, 19 INTEGRATIVE MEDICINE No. 4 14, 17 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7572139/; MISS. DEPT. HUMAN SERVS., MEDICAL ABBREVIATIONS; NURSING SERVICE 3-4, (last visited May 31, 2024); https://www.mdhs.ms.gov/wp-content/uploads/2018/01/XI8C-Medical-Abbreviations-for-Nursing-Services.pdf

numerous treatment notes that support the ALJ's opinion. *See Her*, 203 F.3d at 389, *citing Key*, 109 F.3d at 273.

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, including descriptions of Plaintiff's mental impairments, and ultimately determined that Plaintiff retains the RFC to perform medium work with additional limitations. TR 30. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

## 2. Credibility and Subjective Complaints of Pain

Plaintiff contends that in evaluating the severity of her symptoms, the ALJ did not appropriately address her subjective complaints of pain and unduly relied on the objective evidence to discount Plaintiff's disabling symptoms. Docket No. 9-1, p. 16. Plaintiff specifies that, by not considering the evidence supporting Plaintiff's allegations, the ALJ has impermissibly cherry-picked portions of the record. *See id.* Plaintiff also argues that the ALJ impermissibly discounted Plaintiff's symptoms based on her noncompliance because the ALJ ignored the nature of Plaintiff's condition and how it affects her ability to meaningfully engage in treatment. *See id.* at 17. Plaintiff further alleges that the ALJ's reliance upon Plaintiff's daily activities was erroneous as the activities were not congruent with an ability to perform full time work. *See id.*

Defendant responds that the ALJ properly considered the entire record, including Plaintiff's subjective complaints. Docket No. 11, p. 5. Defendant also specifies the ALJ's consideration of the Plaintiff's conservative medical treatment, with attention to Plaintiff's noncompliance, and ultimately argues that the medical records and Plaintiff's daily activities are inconsistent with Plaintiff's allegations. *See id.* at 11-13. Defendant argues that Plaintiff's

19

activities of daily living were properly considered as one factor in the evaluation of her subjective allegations, and additionally specifies that the issue at hand is not whether Plaintiff's daily activities support a finding of full-time work, but actually whether the activities are consistent with her subjective allegations. *See id.* at 13.

"According to 42 U.S.C. § 423(d)(5)(A), subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 403 (6th Cir. 2018), *quoting Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court must first "examine whether there is objective medical evidence of an underlying medical condition." *Buxton*, 246 F.3d at 773, *quoting Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation marks omitted). "If there is, we then examine: (1) whether this evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Moreover, "[a]llegations of pain . . . do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment." *Bradley v. Sec'y of Health & Human Servs.*, 862 F. 2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage, and effect of medication; and the other

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F. 3d 1027, 1039 (6th Cir. 1994)*, construing* 20 CFR § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F. 3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F. 2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.,* 667 F. 2d 524, 538 (6th Cir. 1981).

The ALJ in the case at bar ultimately found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record for reasons explained in her decision. TR 32. As quoted in the previous section, the ALJ described the inconsistencies between Plaintiff's statements regarding her symptoms and the other evidence in the record. *See* TR 32-33. The ALJ's decision specifically addresses in detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. *Id.* The ALJ's detailed articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463

21

(6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F. 3d at 531, *citing Bradley,* 862 F. 2d at 1227; *cf King v. Heckler*, 742 F. 2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F. 2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F. 3d at 1036), and the reasons must be supported by the record. S*ee King*, 742 F. 2d at 975.

As discussed above, after assessing all of the medical and testimonial evidence, the ALJ ultimately determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity of the symptoms were not consistent with the medical evidence. TR 32. In making this determination, the ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

### 3. Hypothetical Questions and Reliance on the VE's Testimony Related Thereto

Plaintiff argues that the ALJ's hypothetical questions posed to the VE did not accurately reflect her moderate limitations, and therefore that the ALJ erred in relying upon the VE's testimony to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform. Docket No. 9-1, p. 18. Specifically, Plaintiff argues that a restriction to simple work and the finding that she works better with things than people do not adequately account for her limitations. *See id.* at 19.

Defendant responds that the ALJ is only required to include impairments and limitations that are supported by the record when posing hypothetical questions to the VE. Docket No. 11, p.

14.  Because the ALJ incorporated the supported limitations into the RFC and corresponding questions, it is supported by substantial evidence. *See id.*

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity.  20 CFR §§ 404.1520, 416.920.  *See also Moon*, 923 F. 2d at 1181.  The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations, or environmental limitations.  *Abbot v. Sullivan*, 905 F. 2d 918, 926 (6th Cir. 1990).

In the presence of nonexertional limitations that would preclude the application of the grid, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Sec'y of Health & Human Servs.*, 667 F. 2d 524, 531 (6th Cir. 1983).  In other words, the ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987), *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

At Plaintiff's hearing, the ALJ in the instant action posed a few hypothetical questions to the VE.  TR 58-63.  The ALJ first queried:

> Q: All right hypothetical one, assume this lady is of the age, education, has the work history as testified, transferable skills as you have testified. Assume I should find that the claimant has pain and

23

impairment which restrict[s] her abilities as follows…[p]hysically, the individual does have exertional limitations. She can occasionally lift and carry 50 pounds, frequently lift or carry 25 pounds. She can stand and/or walk six hours out of eight, sit six hours out of eight. She does have postural limitations. She can frequently climb ramps and stairs, frequently ladders, ropes, and scaffolds, balancing frequently, kneeling frequently, crouching frequently, crawling frequently. Does she have manipulative limitations? Yes. Reaching in front and/or laterally, unlimited. Reaching overhead, limited left. Handling unlimited, fingering unlimited, feeling unlimited. The reaching overhead left limited is limited to frequently. She can do it frequently, in other words not constantly. She has no visual limitations. The agency defined this as a medium RFC. Can you agree with that?

A: Your Honor, that is correct.

TR 58-59.

The ALJ then modified the hypothetical question and queried:

Q: Mentally, she can understand, remember, and carry out simple, routine, repetitive tasks. She can maintain concentration, persistence, and pace for two-hour periods of time with customary breaks. She can occasionally interact appropriately with coworkers and supervisors but not with the general public. Okay, she would work better with things than people. She can adapt to occasional changes in the workplace and work routine. With that physical and that mental together I know she…Did not have past relevant work but did have past work. Would she be able to go back to it?

….

A: No, Your Honor. That individual would not be able to perform the past relevant work based upon the limitations listed in hypothetical #1.

Q: All right. Now, she didn't have past relevant work. She just had past work. Could she go back to the past work?

A: She would not be able to return to the work of a home attendant.

TR 59- 60.

The ALJ then inquired about jobs that could hypothetically be performed with the given

24

limitations, asking:

> Q: All right. Can you give me three jobs that would be…Medium at…SVP 2 from above what I read you?
>
> A: That is correct, Your Honor.
>
> Q: All right, can you give me three of those please.
>
> A: Absolutely. Let's look at the work of a laundry laborer.
>
> Q: All right…Okay and the <u>DOT</u> for that?
>
> A: 361
>
> Q: Okay.
>
> A: .685-018.
>
> Q: All right.
>
> A: That is a medium and that's a 2 SVP.
>
> Q: Okay. Unskilled. Approximately how many?
>
> A: Approximately 4,000.
>
> Q: Second job?
>
> A: Hand packager.
>
> Q: Okay and the <u>DOT</u>?
>
> A: Actually, excuse me. Let me change hand packager just for the reaching limitation. Let's change that to counter supply worker.
>
> …
>
> Q: Okay and the <u>DOT</u>?
>
> …
>
> A: 319.
>
> Q: Okay.

A: .687.

Q: Okay.

A: 010.

Q: All right.

A: That is also a medium exertional level, 2, it's unskilled and there are approximately 61,000 jobs available.

Q: All right…third job?

A: Hospital cleaner.

Q: All right, and the <u>DOT</u>?

A: 323.687-010.

Q: All right.

A: That is also medium, SVP 2, unskilled.

Q: All right, and approximately?

A: Approximately 81,000.

Q: I need to ask you in accordance with Social Security Ruling 00-4P for the use of vocational experts, your testimony is consistent [with] the <u>Dictionary of Occupational Titles</u>?

A: Your Honor, it is consistent.

TR 60-62.

The ALJ then posed an alternate hypothetical, asking:

Q: All right. Same hypothetical question for hypothetical 2 except that the claimant would not be able to do an eight-hour day, five days a week, per Social Security ruling 8515 in that she would be off task 15% of the time. Based upon that would there be any work she could do passed [*sic*], U.S. or Tennessee?

A: No, Your Honor. These additional limitations are work

26

preclusive. That individual would not be able to maintain a job.

Q: All right. And I also again need to ask you in accordance with…Social Security ruling 00-4p, is your testimony consistent with the <u>Dictionary of Occupational Titles</u>?

A: It is consistent, Your Honor.

Q: All right, thank you. Except that off task is not in the <u>DOT</u>. You got that correct from study and experience. Is that correct?

A: That is correct, Your Honor.

TR 62.

As can be seen, the ALJ posed multiple hypothetical questions to the VE, each incorporating different combinations of exertional and nonexertional limitations alleged by Plaintiff and/or contained within the record. TR 58-62. As has been discussed in the statements of error above, the ALJ properly evaluated the evidence, found that Plaintiff's allegations were not fully credible, and ultimately determined that Plaintiff retained the following RFC:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant can occasionally lift and carry 50 pounds and frequently lift 25 pounds; she can stand and/or walk for 6 hours out of 8 hours, can sit for 6 out of 8 hours; can frequently climb ladders, ropes, scaffolds, ramps, and stairs, balance, stoop, kneel, crouch, and crawl; and she can frequently reach overhead with the left upper extremity. Mentally, claimant can understand, remember, and carry out simple routine repetitive tasks; she can maintain concentration, persistence and pace for such tasks in two-hour intervals with customary breaks. She can interact occasionally with supervisors and coworkers, but she cannot interact with the general public. She would work better with things than with people. Additionally, the claimant can adapt to occasional changes in the workplace and work routine.

TR 30.

An ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of

performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley*, 820 F. 2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

In the instant action, the hypothetical question posed to the VE by the ALJ, upon which the ALJ relied to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform, accurately reflected the limitations that the ALJ found credible, consistent with, and supported by, the evidence of record. *See* TR 36, 58-62. While Plaintiff argues that the restriction to simple work and finding that she works best with things instead of people does not sufficiently account for her limitations, the ALJ found that the limitations alleged by Plaintiff in her complaint are inconsistent with the overall medical evidence, and therefore was not required to make an inquiry to the VE based upon them. *See* Docket 9-1, p. 18; TR 36. Because the hypothetical question upon which the ALJ ultimately rendered her decision accurately represented Plaintiff's credible limitations, the ALJ properly relied on the VE's answer to that hypothetical question to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform. *See Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F. 2d 922, 927-28 (6th Cir. 1987); *Varley*, 820 F. 2d at 779. Accordingly, Plaintiff's claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this

Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986); 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

29